UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TRAVIS PAIGE,<br><br>      Petitioner,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent | )<br>)<br>)<br>)<br>)   2:22-cr-00091-NT<br>)   2:23-cv-00393-NT<br>)<br>)<br>)<br>) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 51.) Following a guilty plea, Petitioner was convicted of one count of conspiracy to commit bank fraud, five counts of bank fraud, and five counts of aggravated identity theft; the Court sentenced Petitioner to thirty-six months in prison. (Judgment, ECF No. 48.)

Petitioner claims that his aggravated identity theft conviction and sentence must be vacated based on the United States Supreme Court decision in *Dubin v. United States*, 599 U.S. 110 (2023). The Government requests dismissal. (Response, ECF No. 62.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request and dismiss Petitioner's motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In October and November 2020, Petitioner and others engaged in a scheme to obtain money under the control of financial institutions by using stolen checks, account numbers,

and driver's licenses. (Prosecution Version at 2–3, ECF No. 26; Revised Presentence Investigation Report (PSR) at 5, 8, ECF No. 34.) Petitioner and his coconspirators broke into unattended vehicles to steal personal information and documents. (Prosecution Version at 1; PSR ¶ 6.) A coconspirator would then go to a financial institution posing as a victim to withdraw funds from that victim's account or to cash a forged check made out to that victim from a different victim. (Prosecution Version at 2–3; PSR at 5, 8.)

In July 2022, the grand jury indicted Petitioner on one count of conspiracy to commit bank fraud in violation of 18 U.S.C. §§ 1349 and 1344, five counts of bank fraud in violation of 18 U.S.C. §§ 1344, and 2, and five counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 2. (Indictment, ECF No. 4.) In November 2022, Petitioner pled guilty to each charge. (Change of Plea Hearing, ECF No. 27.)

At sentencing in May 2023, the Court calculated a guideline range of eighteen to twenty-four months on the first six counts and twenty-four months on the last five counts to be served consecutively, which produced an aggregate range of forty-two to forty-eight months in prison. (PSR ¶¶ 71–74; Sentencing Transcript at 35–36, ECF No. 61.) The Court sentenced Petitioner to twelve months on the first six counts and twenty-four months on the last five counts to be served consecutively, which produced a total term of thirty-six months in prison. (Judgment, ECF No. 48.) Petitioner did not file an appeal.

In June 2023, the Supreme Court issued its decision in *Dubin v. United States*, 599 U.S. 110 (2023), construing the aggravated identity theft statute that supported the consecutive twenty-four-month portion of Petitioner's sentence. Petitioner, citing *Dubin*,

2

subsequently filed the section 2255 motion alleging ineffective assistance of counsel and actual innocence.

## DISCUSSION

**A.      Legal Standards**

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

"[P]ro se habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes

a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if the petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

5

B.    *Dubin* Claim

Petitioner contends that under the Supreme Court's construction in *Dubin* of 18 U.S.C. § 1028A, the record does not support a conviction for aggravated identify theft and, therefore, he is innocent of the charge. Relatedly, he argues that his attorney provided ineffective assistance when his attorney did not challenge the applicability of the statute based on the arguments that ultimately prevailed in *Dubin*.

The federal identity fraud statute makes it a crime to knowingly produce, transfer, possess, or traffic in false or unauthorized identification documents or authentication features. 18 U.S.C. § 1028(a). The punishment is a maximum penalty of five or fifteen years in prison depending on the nature of the crime, and there are enhancements for terrorism-related conduct, drug-related conduct, and prior convictions. *Id.* § 1028(b). The aggravated identity theft statute makes it a crime to knowingly transfer, possess, or "use," without lawful authority, a means of identification of another person "during or in relation to" an enumerated offense, including wire fraud. 18 U.S.C. § 1028A(a)(1), (c)(5). A "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual. . . ." *Id.* § 1028(d)(7). In general, the penalty is a mandatory two-year sentence consecutive to the sentence imposed for the underlying crime. *Id.* § 1028A(a)(1), (b).

At the time of Petitioner's convictions, the scope of the aggravated identity theft statute was arguably uncertain as there was a split among some circuits. The Government advocated an expansive interpretation of the statute, including regarding what it meant to "use" a means of identification of another person "during or in relation to" an underlying

crime, but several circuits, including the First Circuit, had adopted different and narrower interpretations of the statute. *See United States v. Berroa*, 856 F.3d 141, 156–57 (1st Cir. 2017); *see also*, *United States v. Medlock*, 792 F.3d 700, 708 (6th Cir. 2015); *United States v. Spears*, 729 F.3d 753, 758 (7th Cir. 2013); *United States v. Hong*, 938 F.3d 1040, 1051 (9th Cir. 2019). In *Dubin*, the Fifth Circuit adopted a broader reading of the statute, *see United States v. Dubin*, 27 F.4th 1021 (5th Cir. 2021), but the Supreme Court reversed, holding:

> A defendant "uses" another person's means of identification "in relation to" a predicate offense when this use is at the crux of what makes the conduct criminal. To be clear, being at the crux of the criminality requires more than a causal relationship, such as facilitation of the offense or being a but-for cause of its success. Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive.

*Dubin*, 599 U.S. at 131–32 (citation and certain quotation marks omitted).

The Supreme Court rejected the Government's "boundless reading" of the statute, *id.* at 128, and distinguished scenarios where the use of a means of identification, such as a name, was only "ancillary" to the fraud and did not constitute identify theft. For example, if an ambulance service "transported patients but inflated the number of miles driven," the use of patient names would be "part of the billing process, but ancillary to what made the conduct fraudulent," *id.* at 117, whereas in a case involving a "pharmacist who swipes information from the pharmacy's files and uses it to open a bank account in a patient's name," the "crux of the fraud" involves the "misuse of the means of identification." *Id.* at 118. If "a lawyer rounds up her hours from 2.9 to 3 and bills her client using his name, the name itself is not specifically a source of fraud; it only plays an ancillary role in the billing

process." *Id.* at 123. "The same is true for the waiter who substitutes one cut of meat for another; we might say the filet mignon's identity was stolen, perhaps, but not the diner's." *Id.* In *Dubin*, therefore, the Supreme Court endorsed the "rule of thumb" that "[w]hen a means of identification is used deceptively, this deception goes to 'who' is involved, rather than just 'how' or 'when' services were provided." *Id.* at 123, 132.

In general, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced," *Teague v. Lane*, 489 U.S. 288, 310 (1989), but "new substantive rules"—those that "alter the range of conduct or class of persons that the law punishes"—apply retroactively on collateral review. *Edwards v. Vannoy*, 593 U.S. 255, 276 (2021). Because *Dubin* narrowed the range of conduct punishable under the statute, it can apply retroactively to certain cases on collateral review, which the Government did not challenge.[1]

Petitioner, however, procedurally defaulted the argument by failing to raise the issue before sentencing or on direct appeal, *see Bousley v. United States*, 523 U.S. 614, 621–22 (1998). "A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law," *Martinez v. Ryan*, 566 U.S. 1, 10 (2012), or by showing that a miscarriage of justice would occur based on a sufficient showing of actual innocence, meaning that the Court would now conclude that "it is more

---

[1] Because the First Circuit had construed the statute narrowly before *Dubin*, the law applied in Petitioner's case was arguably consistent with the ultimate holding in *Dubin*, which means it is not obvious whether someone in the First Circuit (as opposed to the Fifth Circuit) could assert the new rule for purposes of retroactive relief or the statute of limitations. Because the Government did not challenge the issue, the Court need not resolve it.

likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also*, *Bousley*, 523 U.S. at 623–24.

Petitioner cannot overcome the procedural default and his claim would fail on the merits because Petitioner's conduct is within the interpretation the Supreme Court adopted in *Dubin*.[2] Petitioner's and the coconspirators' use of the victims' names, account numbers, and driver's licenses was at the crux of the fraudulent bank transactions. Petitioner's fraudulent withdrawals and forged checks did not address real services rendered while misrepresenting "how" or "when" the services were provided. Rather, at financial institutions, the conspirators used the appearances, names, and identification cards of victims to misrepresent "who" the conspirators were, and the conspirators misrepresented "who" had written the checks directing the financial institutions to transfer funds from victims' accounts.

---

[2] The Supreme Court has also recognized that if a claim "is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for [the] failure to raise the claim . . . ." *Reed v. Ross*, 468 U.S. 1, 16 (1984). A petitioner cannot establish a claim was "not reasonably available to counsel" just because of the perception that "a claim was unacceptable to that particular court at that particular time," *see Bousley*, 523 U.S. at 622–23, but a claim is deemed unavailable when it results from a "clear break with the past" in a new Supreme Court case:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overturn a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprove a practice this Court arguably has sanctioned in prior cases.

*Ross*, 468 U.S. at 17 (citations, quotations, and modifications omitted); *see also Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018). *Dubin* does not satisfy any of the three *Ross* exceptions.

Notably, *Dubin* did not narrow the scope of the law in the First Circuit. In *Berroa*, the First Circuit held that § 1028A(a) "require[s] that the defendant attempt to pass him or herself off as another person or purport to take some other action on another person's behalf," *Berroa*, 856 F.3d at 156, an approach the Supreme Court described as "restrained." *Dubin*, 599 U.S. at 116 n.2. To the extent there is any difference between the *Berroa* and *Dubin* standards, the *Berroa* standard arguably reflects a narrower interpretation. In any event, Petitioner's conduct fits well within the *Berroa* and *Dubin* interpretations – Petitioner and/or his coconspirators passed themselves off as the victims in person at the financial institutions and in writing on the forged checks.[3]

In sum, because Petitioner's § 1028A conviction and sentence are consistent with *Dubin*, counsel did not perform deficiently by declining to challenge the scope of the statute before the district court or on appeal, Petitioner was not prejudiced by counsel's decisions, Petitioner cannot establish that he is actually innocent of the charge, and his claim fails on the merits.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing

---

[3] Petitioner also argues incorrectly that the aggravated identity theft statute has now been held to be unlawfully vague. The Supreme Court explicitly rejected such a holding. *See Dubin*, 599 U.S. at 132 n.10. Petitioner's view only garnered the support of one justice.

Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of May, 2024.